UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,        Case No. 3:10CR506
                      Toledo, Ohio
   vs.               Monday, January 3, 2011
                      2:50 p.m.
JENNIFER L. SMITH,

       Defendant.

TRANSCRIPT OF ARRAIGNMENT AND PLEA HEARING
BEFORE THE HONORABLE JAMES R. KNEPP, II
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:  Thomas A. Karol
                    Office of the U.S. Attorney - Toledo
                    Four SeaGate, Suite 308
                    Toledo, Ohio 43604
                    (419) 259-6376

For the Defendant:  Jerry P. Purcel
                    Attorney at Law
                    3230 Central Park, E, Suite 106
                    Toledo, Ohio 43617
                    (419) 578-2300

Court Reporter:     Caroline Mahnke, RMR, CRR
                    Federal Building & U.S. Courthouse
                    2 South Main Street, Suite 568
                    Akron, Ohio 44308
                    (330) 252-6021

Proceedings recorded by ECRO; transcript produced by
computer-aided transcription.

THE COURT: We are here on the matter of United States of America versus Jennifer L. Smith. We're here today for, I believe, initial appearance and plea on the case.

Present in the courtroom are Ms. Smith and her attorney, Mr. Purcel. On behalf of the government, Mr. Karol is here, Assistant United States Attorney Karol, and -- I'm sorry?

MR. KAROL: I'm being assisted by United States Secret Service Agent Louis Johns.

THE COURT: Welcome, Mr. Johns.

Also here from pretrial services is Ms. Lafferty.

Are the parties ready to proceed?

MR. PURCEL: Yes, Your Honor.

MR. KAROL: The government is, and I already put on the Court's bench the waiver of indictment signed by the defendant and counsel as well as the agreement to consent to proceed with these proceedings in front of the magistrate, Your Honor.

THE COURT: Okay.

Ms. Smith, the Court understands it's your intention to waive indictment and to enter a plea of guilty this afternoon. Before I can do that, I have to take care of some business and kind of give you a roadmap of what we're going to do.

1        The first thing I have to do is get your consent to my

2    taking your plea as opposed to an Article III judge, and

3    I'll explain to you what that means.

4        I have to satisfy myself that you're competent to

5    waive indictment, plead guilty at this time.  I have to make

6    sure that you understand the trial rights which will be

7    waived if I recommend that your guilty plea be entered.  I

8    have to make sure that you fully understand the nature of

9    the charges.  And I have to make sure that your -- I have to

10   satisfy myself that your waiver and plea are voluntarily

11   made and not coerced in any way.  So we will kind of go

12   through a little roadmap to get to that.

13       The first matter we have to address is your waiver of

14   the right to have the proceeding conducted by what's called

15   an Article III judge.  Article III judges are appointed by

16   the president, confirmed by the senate for a term of life.

17   They are set forth in Article III of the Constitution.

18   That's why they call them that.

19       Do you understand you have the right to have this

20   matter heard today by an Article III judge?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Do you understand that I am not an

23   Article III judge.  I'm not a district judge.  I'm what's

24   called a magistrate judge.  What that means is that I am

25   appointed by other judges in the district for a term of

1    eight years subject to reappointment.  Do you understand

2    that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  Have you discussed with your

5    attorney my conducting these proceedings, and have you

6    concluded that it's in your best interest to proceed with me

7    here today even though I'm not a United States district

8    judge?

9              THE DEFENDANT:  Correct.

10             THE COURT:  As you know, this case is assigned to

11   Judge -- Senior District Judge James G. Carr.  Are you

12   voluntarily and knowingly giving up your right to plead

13   before Judge Carr or another Article III judge, and do you

14   voluntarily consent to appearing before me for these

15   proceedings today?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Thank you.

18        I have received a consent to -- consent to my

19   receiving your plea of guilty today.

20        Is this your signature on that written consent?

21             THE DEFENDANT:  Correct, yes.

22             THE COURT:  Has anyone made any threats or

23   promises to coerce or induce you to enter into this waiver?

24             THE DEFENDANT:  No.

25             THE COURT:  Okay.  Upon your answers, upon your

1   answers to my questions and upon review of the written

2   consent, I will find that you have knowingly and voluntarily

3   consented to my conducting this proceeding today and I'll

4   make your written consent a part of the record in this case,

5   if my courtroom deputy will accept it for filing.

6          In a moment, Ms. Smith, we're going to place you under

7   oath and I'm going to ask you some questions and give you

8   some information about the impact of your plea and I'll make

9   sure that you understand the information that I give you.

10         Before I do that, I want to cover just a couple of

11  things with you.  First of all, although you're going to be

12  waiving certain rights today and I'm going to go through a

13  litany of rights that you'll be waiving, right to the trial,

14  certain appellate rights, so forth, the one thing that

15  you're not going to have to waive today is your right to

16  counsel.

17         Nobody is going to ask you at any point during this

18  proceeding to waive your right to counsel.  That stays with

19  you before, during, and after this proceeding today.  And

20  what that means is if you need to speak with Mr. Purcel at

21  any point as we're going today, you stop, and you can talk

22  to him at any point if you need to talk with him, okay?

23  It's very important --

24                THE DEFENDANT:  Yes.

25                THE COURT:  -- for me to understand -- so you

1  understand you are not waiving your right to counsel.  Do

2  you understand that?

3         THE DEFENDANT:  Yes.

4         THE COURT:  Okay.  Another thing I need to make

5  sure you understand is in a minute we are going to place you

6  under oath.  Once we do that, anything you say subjects you

7  to the penalties of perjury.

8      Do you understand that?

9         THE DEFENDANT:  Yes.

10         THE COURT:  You also need to understand that

11  giving truthful answers to some of the questions that I'm

12  going to ask you is going to necessarily result in your

13  waiving your right to not testify against yourself as

14  guaranteed by the Fifth Amendment because some of your

15  answers are going to be incriminating, because as part of

16  this plea this afternoon you're going to be required to

17  admit your guilt.

18      Do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand everything that

21  I've told you so far?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Okay.

24      Madam deputy, would you please swear the defendant.

25      (The defendant was sworn in.)

1           THE COURT:  Ma'am, would you please state your

2     full name for the record.

3           THE DEFENDANT:  Jennifer L. Smith.

4           THE COURT:  Have you ever had any other names?

5           THE DEFENDANT:  My maiden name, Radjewski.

6           THE COURT:  Okay.  Could you spell that.

7           THE DEFENDANT:  R-A-D-J-E-W-S-K-I.

8           THE COURT:  And when did you change your name?

9           THE DEFENDANT:  When I was married in 1999.

10          THE COURT:  How old are you?

11          THE DEFENDANT:  37.

12          THE COURT:  Where do you live?

13          THE DEFENDANT:  3155 Rocksberry, in Toledo.

14          THE COURT:  Are you married?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you have any dependent children?

17          THE DEFENDANT:  I do.

18          THE COURT:  How many?  What ages?

19          THE DEFENDANT:  Two, and the oldest is six; the

20    youngest will be two next month.

21          THE COURT:  How far did you go in school?

22          THE DEFENDANT:  Some college but no degree.

23          THE COURT:  No problems reading and writing

24    English, though, right?

25          THE DEFENDANT:  No.  No, sir.

1          THE COURT:  What kind of work have you done in

2     the past few years?

3          THE DEFENDANT:  I have worked at various

4     financial institutions, banks, credit union, doing

5     collections of mortgages, to consumer loans, to checking

6     accounts, things of that nature.

7          THE COURT:  Are you in good physical health?

8          THE DEFENDANT:  I believe so.

9          THE COURT:  Okay.  Are you under the influence of

10    any drugs, alcohol, or medication that would impair your

11    ability to understand what's going on here today?

12         THE DEFENDANT:  No.

13         THE COURT:  Have you taken any drugs, alcohol, or

14    medication in the last few days?

15         THE DEFENDANT:  No.

16         THE COURT:  Your mind is clear and you know why

17    you're here and you understand the purpose of this hearing?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Have you been under the care of a

20    doctor or hospital for a mental condition in the past five

21    years?

22         THE DEFENDANT:  No.  Never.

23         THE COURT:  Mr. Purcel, have you had any

24    difficulty communicating with Ms. Smith?

25         MR. PURCEL:  Absolutely not, Your Honor.

1     THE COURT:  Have you discussed the case with her?

2          MR. PURCEL:  Yes, I have, Your Honor.

3     THE COURT:  Do you believe she understands the

4  purpose and nature of this hearing today?

5          MR. PURCEL:  Yes, Your Honor.  We've discussed

6  this case for the last year.

7          THE DEFENDANT:  Almost two years, yeah.

8     THE COURT:  Do either you or Mr. Karol have any

9  question or doubt as to Ms. Smith's competence at this

10  hearing today?

11         MR. PURCEL:  None whatever.

12         MR. KAROL:  The government does not, Your Honor.

13    THE COURT:  Upon Ms. Smith's answers to my

14  questions and the statements of counsel, the Court makes a

15  finding that are you competent to enter a plea this

16  afternoon.

17    Ms. Smith, have you had enough time and opportunity to

18  speak with your lawyer about this matter?

19         THE DEFENDANT:  Yes.

20    THE COURT:  Have you told your lawyer everything

21  you know about the case?

22         THE DEFENDANT:  Yes.

23    THE COURT:  Are you satisfied with the advice,

24  competence, and efforts of your lawyer?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Have you discussed all possible legal

2     defenses to the charges against you?

3          THE DEFENDANT:  I believe so, yes.

4          THE COURT:  Are you satisfied with the legal

5     assistance you've received?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Remember, you can stop at any point

8     during this hearing if you need to and speak with him, okay.

9          THE DEFENDANT:  Thanks.

10          THE COURT:  Have you received and read a copy of

11     the criminal information -- indictment -- which was filed in

12     this case?

13          THE DEFENDANT:  Yes, I have.

14          THE COURT:  I'm sorry, information, yeah.  I said

15     indictment.  I meant information.

16          The information having been filed on December 6, 2010.

17     I'm not sure I gave the case number and caption at the top

18     here, but it's Jennifer L. Smith, Case Number 3:10CR506.

19          You have had an opportunity to review the information?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Have you discussed it with your

22     lawyer?

23          THE DEFENDANT:  I have.

24          THE COURT:  Mr. Purcel, will you waive its formal

25     reading and any defects?

1          MR. PURCEL:  Yes, we will, Your Honor.

2          THE COURT:  Mr. Karol, would you please summarize

3    the charges, including the maximum penalties, mandatory

4    minimums, guideline calculations, special assessment,

5    supervised release terms, and any restitution provisions or

6    forfeiture requirements.

7          MR. KAROL:  Yes, Your Honor.

8          This charge is bank fraud in violation of Title 18

9    United States Code, Section 1344.  With bank fraud we have

10   to establish that there was a financial institution, and

11   that defendant knowingly devised a scheme and

12   artifice -- knowingly devised a scheme and artifice to

13   defraud such financial institution.

14         With respect to the penalties for bank fraud, there is

15   a maximum statutory penalty of up to 30 years imprisonment

16   and/or a $1 million fine.

17         Upon conviction and sentencing, there is a mandatory

18   special assessment of $100.

19         Following any term of imprisonment, the Court can

20   impose supervised release up to five years.

21         Should the defendant violate the conditions of her

22   supervised release, the Court can revoke the supervised

23   release term and order the defendant to serve a term of

24   imprisonment of the entire term of supervised release

25   without any credit for the time prior to the violation

1    itself.

2         Furthermore, with respect to -- oh, let me -- before I

3    forget, Your Honor, sentencing guidelines is but one factor.

4    A sentencing guidelines computation has been done by the

5    government.  In a moment I'll explain.  We have two

6    computations based on acceptance of responsibility.

7         With regard to the immediate loss -- and I'll explain

8    that in a second -- as a result of defendant's actions on

9    her own account we believe her offense level would be nine,

10   in a four to ten month sentencing range, which is known as a

11   Zone B sentencing range.

12        If it is the larger dollar amount, the restitution or

13   loss amount, I should say, the offense level would be as

14   high as 13 with a 12 to 18 month sentencing guideline range.

15        Sentencing guidelines are simply one factor the Court

16   must consider in imposing a sentence.  It's simply an

17   advisory, one of the -- it's known as the advisory

18   sentencing guideline.

19        That brings us to the issue of loss and/or

20   restitution, Your Honor.  The loss from defendant's own

21   account as a result of her bank fraud is just over $20,000.

22        However, the credit union for whom she worked stated

23   it suffered an additional loss on other accounts, collateral

24   damage, you may call it -- and I'll explain when I give the

25   statement of facts -- an additional loss to other accounts

in the amount of $52,000.

And I'll be clear when I give the statement of facts she did not steal from those accounts. Simply other losses were created as a result of her action.

THE COURT: Okay.

Mr. Purcel, were you able to understand the summarization of the charges and penalties and so forth, and do you concur with Mr. Karol's characterization?

MR. PURCEL: Yes, Your Honor.

THE COURT: Thank you.

Upon your review of the information, Ms. Smith, and upon hearing Mr. Karol's summarization, do you understand the nature of the charges against you?

THE DEFENDANT: Yes.

THE COURT: As well as the maximum penalties, mandatory minimums, guideline calculation, special assessment, supervised release term, and restitution? Do you understand all that?

THE DEFENDANT: Yes.

THE COURT: Do you understand if you enter a plea with respect to those charges, you'll be admitting your guilt and waiving any right to claim innocence in this case?

THE DEFENDANT: Correct.

THE COURT: It's my understanding that you wish to waive indictment in this case, so I need to go over what

1    that means and make sure you understand what you're doing

2    there, okay?

3        Do you understand that if you do not waive indictment,

4    you may not be charged with a felony unless a grand jury

5    finds by a return of an indictment that there was probable

6    cause to believe that a crime was committed and that you

7    committed the crime.

8        Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Do you understand that in order to

11   obtain an indictment, the government must present the

12   charges to a grand jury before the matter can even be

13   brought to court.  And a grand jury is composed of between

14   16 and 23 persons.  At least 12 grand jurors must find

15   probable cause before you can be indicted.

16       Do you understand that?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Do you understand that a grand jury

19   might or might not vote probable cause in any given case,

20   including this one?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Do you understand that if you waive

23   indictment by the grand jury the case will proceed against

24   you upon the information just as though you had been

25   indicted?

1          THE DEFENDANT:  Correct.

2          THE COURT:  It's my understanding that you

3    prepared a written waiver of indictment; is that correct?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you feel it's in your best

6    interest to enter into this written waiver?

7          THE DEFENDANT:  At this time, yes.

8          THE COURT:  Have any threats or promises been

9    made to induce you to enter into this waiver?

10          THE DEFENDANT:  No.

11          THE COURT:  Mr. Purcel, do you know of any reason

12    why your client should not waive indictment in this case?

13          THE DEFENDANT:  None, Your Honor.

14          THE COURT:  Ms. Smith, do you understand

15    everything we have done so far?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Is it your wish to waive indictment

18    by the grand jury?

19          THE DEFENDANT:  It is.

20          THE COURT:  And this is your signature?

21          THE DEFENDANT:  Correct, yes.

22          THE COURT:  Upon that, the Court will make a

23    finding that you've knowingly and voluntarily waived

24    indictment in this case and will file your written waiver as

25    a part of the record.

1    Ms. Smith, have you reviewed your constitutional

2  rights with Mr. Purcel?

3         THE DEFENDANT:  Yes.

4         THE COURT:  I understand that, but I'm going to

5  go ahead and review certain of those rights with you here on

6  the record so I can satisfy myself that you understand them,

7  okay?

8         THE DEFENDANT:  Um-hum.

9         THE COURT:  Under the Constitution of the United

10  States you have the right to a trial either to a court or to

11  a jury.  And at that trial you would have a right to

12  confront and cross-examine witnesses that the government

13  might bring to testify against you.

14    Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  At the trial you would have a process

17  for obtaining witnesses to testify on your behalf, your own

18  witnesses.  And at the trial the government would be

19  required to prove your guilt beyond a reasonable doubt.

20    Do you understand both of those things?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you understand that you could not

23  be compelled to testify against yourself at a trial?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that by waiving and

1    entering your plea you're giving up your right not only to

2    the trial but to all of those other rights that I just

3    listed?

4                THE DEFENDANT:  Yes.

5                THE COURT:  Do you understand you have a right to

6    plead not guilty?

7                THE DEFENDANT:  Yes.

8                THE COURT:  You have a right to plead not guilty

9    even if you are guilty?

10               THE DEFENDANT:  Yes.

11               THE COURT:  Do you understand that if you plead

12   not guilty, you would have the right to a speedy trial at

13   which you would have the right to be represented by a

14   lawyer, and if you could not afford a lawyer, the Court

15   would appoint one to represent you.

16          Do you understand that?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Do you understand that if this matter

19   were to proceed to trial, you would be presumed innocent,

20   and you wouldn't have to prove that you're innocent.  The

21   burden of proof in a criminal trial stays with the

22   government until the very end.

23          Do you understand that?

24               THE DEFENDANT:  Yes.

25               THE COURT:  If you had a trial you could not be

1   forced to testify but you would have the right to testify if

2   you chose to.  And if you chose not to testify, no inference

3   or suggestion of guilt could be drawn from the fact that you

4   did not testify.

5        Do you understand that?

6             THE DEFENDANT:  Yes.

7             THE COURT:  And that's an important right that

8   every defendant has in a criminal case.

9        If your trial was before a jury, a large number of

10  potential jurors whose names are chosen at random would be

11  summoned to this courthouse and we would ultimately comprise

12  a jury of 12 persons after you and your lawyer had an

13  opportunity to participate in the jury selection process and

14  to exclude jurors for cause, for example, if a juror was

15  biased or for some other legally sufficient reason.  You

16  would also have a right to exclude certain jurors for no

17  cause whatsoever.  Those are called peremptory challenges.

18  A jury would have to agree unanimously before it could find

19  you guilty.

20       Do you understand that?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Do you understand everything I've

23  told you so far?

24            THE DEFENDANT:  Yes.

25            THE COURT:  If at trial you were found guilty,

1   you would also then have a right to appeal your conviction

2   under certain circumstances.

3        Do you understand that?

4             THE DEFENDANT:  Yes.

5             THE COURT:  You would also have a statutory right

6   to appeal your sentence under certain circumstances.

7        Do you understand that?

8             THE DEFENDANT:  Yes.

9             THE COURT:  Do you understand that if you plead

10  guilty you're waiving those rights?  And if your plea is

11  accepted, there will be no trial, and I will enter a

12  recommendation that a finding of guilty be entered and that

13  the district judge will consider that recommendation.  And

14  assuming he concurs, he will enter a finding of guilty upon

15  the record and then sentence you on the basis of your plea

16  after considering a presentence investigation.

17       Do you understand that?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Do you also understand that by

20  pleading guilty you will be deprived of valuable civil

21  rights such as the right to vote, the right to hold public

22  office, the right to serve on a jury, and the right to

23  possess any kind of firearm.

24       Are you willing to give up these rights?

25            THE DEFENDANT:  Yes.

1    THE COURT:  The government outlined the maximum

2    penalty, including not only the sentence but mandatory

3    minimum, special assessment, supervised release term, and

4    restitution and forfeiture requirements.

5        Do you understand that following a prison term you

6    will be subject to a period of supervised release and that

7    violation of the conditions of supervised release can result

8    in revocation of that release and additional jail time

9    without any credit for supervised release time already

10   served prior to the violation?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Do you understand that restitution

13   may be ordered as a condition of your sentence?

14              THE DEFENDANT:  Yes.

15              THE COURT:  Depending on your financial status,

16   the Court can order you to pay the cost of your confinement

17   or supervised release.  Do you understand that?

18              THE DEFENDANT:  Yes.

19              THE COURT:  Do you also understand as a result of

20   your guilty plea an assessment of $100 per count must be

21   imposed by the Court?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Have you and your lawyer talked about

24   the sentencing guidelines?

25              THE DEFENDANT:  Yes.

1          THE COURT:  You heard Mr. Karol indicate at least

2     a preliminary sentence calculation.  Do you understand that

3     it's not possible to calculate with any specificity your

4     sentence at this point in time?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Once a presentence investigation has

7     been completed, the Court will be in a position to determine

8     a guideline range based upon your crime in this case and

9     your criminal history.

10         Do you understand that?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Under the current state of the law,

13    the Court must treat the guidelines as advisory, meaning

14    they're not binding but they are a factor the Court must

15    consider.

16         Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  The Court will consider the

19    guidelines as well as the provisions of Section 3553(a) of

20    Title 18 which contain factors a judge must consider in

21    imposing a sentence.  Those factors include but are not

22    limited to the nature and circumstances of the crime, and

23    the history and characteristics of the defendant, the need

24    for the sentence to reflect the seriousness of the offense,

25    to promote respect for the law, and to provide just

1  punishment, to afford a deterrent to criminal conduct, to

2  protect the public from further crimes, and to provide you

3  with needed educational or vocational training, medical

4  care, drug, or other correctional treatment.

5      Mr. Karol, would you please summarize what the

6  evidence would be if this case were to proceed to trial?

7      And Ms. Smith, I'm going to ask you to listen very

8  carefully because at the end of this I'm going to

9  essentially ask you to adopt it as your own statement.  I

10  could make you stand up and basically say here is what I

11  did, but I think it's more productive and it's easier for

12  the process if we have Mr. Karol just explain what the

13  evidence would be.

14      When he is done, I'm going to ask you do you agree

15  with that, because you can't plead guilty unless there is

16  evidence to support that you actually committed the crime.

17      Do you understand that?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay.  Mr. Karol.

20          MR. KAROL:  Thank you, Your Honor.

21      The critical events took place between March of 2008

22  and January of 2009.  During that time period, Ms. Smith was

23  employed at the Directions Credit Union here in Northwest

24  Ohio which is a federally insured credit union.  She also

25  had bank accounts at three other financial institutions:

1   The WoodForest National Bank, Capital One Bank, and

2   Washington Mutual Bank.

3        The Directions Federal Credit Union, as is the case

4   with many credit unions, processes their checks through a

5   larger institution.  In the case of Directions Credit Union,

6   they processed it through the Corporate One Federal Credit

7   Union, which in turn processed it through the federal

8   reserve system.

9        In the event that a check is returned as having

10  non-sufficient funds, it ultimately is returned to the

11  Directions Credit Union.  And the Corporate Federal Credit

12  Union in turn charges the Directions Credit Union's account

13  for all the items returned as non-sufficient funds.

14       A daily list identifying those items along with copies

15  of the individual checks is provided to Directions Credit

16  Union by the Corporate Federal Credit Union in the

17  processing system.

18       During the relevant time period, we would establish

19  that Ms. Smith wrote checks from her bank accounts at the

20  three other institutions I mentioned, WoodForest National

21  Bank, Capital One Bank, and Washington Mutual Bank.  Those

22  checks were written on insufficient funds accounts.  She did

23  not have adequate funds to cover the checks in those

24  institutions.

25       She deposited those checks into her Directions Credit

1   Union account and used those funds for her personal uses.

2           Ultimately the checks go back to the institutions.

3   It's determined they are non-sufficient checks, and they're

4   routed back again through that federal reserve system

5   through the Corporate Federal Credit Union and back to the

6   Directions Credit Union.

7           At this point in time, we would establish that on

8   separate occasions, we believe up to 21 separate occasions,

9   the defendant intercepted the mail.  When I say intercepted,

10  she opened the mail, whatever that Directions Credit Union

11  got, destroyed the report identifying her checks as

12  non-sufficient checks as well as checks accompanying that

13  report, including her checks.

14          In essence, she was doing a check kite, Your Honor,

15  and destroying the checks as they came back, the

16  insufficient checks as they came back to the Directions

17  Credit Union.

18          The loss -- and this is what I was explaining earlier.

19  The loss on her account itself that was discovered was

20  $20,429.  Additionally, Directions Credit Union has advised

21  the government that there apparently is a 90-day federal

22  reserve -- the federal reserve only keeps documentation for

23  90 days regarding these items of non-sufficient funds and

24  that a member credit union must act upon that daily list I

25  mentioned that gets sent back to the credit union in a

1    timely manner.  Otherwise no collections action can take

2    place or can occur, and the credit union ends up absorbing

3    the loss.

4          Because of the time that lapsed before the credit

5    union discovered the fraud, there were a number of other

6    members, according to the credit union, who also had

7    non-sufficient funds that were beyond that 90-day window.

8          The Directions Credit Union has advised the government

9    that additional members whose accounts were overdrawn or had

10    deposited non-sufficient checks totalled $52,787.03.

11          Mr. Purcel and I have discussed this matter, and I

12    fully expect defendant to contest any responsibility for

13    that loss, assuming there is that loss, any responsibility

14    of this defendant for that loss nor, according to Mr.

15    Purcel, should she be held accountable in determining the

16    loss amount.

17          But that's a sentencing computation, Your Honor, not a

18    matter with respect to whether in fact she committed the

19    offense.

20          Did I confuse it sufficiently?

21             THE COURT:  No.  I understand.

22          Is that it?

23             MR. KAROL:  And we would establish all those

24    facts, Your Honor, if we proceeded to trial.

25             THE COURT:  Taking aside the collateral damage

1   issue, meaning the $50,000, what is the amount that -- from

2   her own account?  20,000 --

3               MR. KAROL:  It was $20,429, Your Honor.

4               THE COURT:  Okay.  Taking aside the collateral

5   damage characterization that you heard Mr. Karol make, do

6   you agree with his statement in every other regard?

7               THE DEFENDANT:  I do.  I think.

8               THE COURT:  Well, you need to tell me.  If there

9   is something you don't agree with let me hear it.

10              THE DEFENDANT:  Well, I disagree with this

11  paragraph.

12              MR. PURCEL:  He said keeping aside the 50,000 --

13              THE DEFENDANT:  Yes, I agree with that.

14              MR. PURCEL:  That you did take the $20,429?

15              THE DEFENDANT:  Yes.

16              THE COURT:  And just so we're clear, you are

17  admitting that you, through the enterprise that Mr. Karol

18  just described, you took $20,429?

19              THE DEFENDANT:  Yes.

20              THE COURT:  You dispute the government's and/or

21  the credit union's characterization that that same action by

22  you resulted in the loss of $52,787.03?

23              THE DEFENDANT:  Exactly.

24              THE COURT:  You understand that's a determination

25  for sentencing, but your guilt for the offense charged is

premised on the $20,429 which you are admitting that you

took, and you took it the way Mr. Karol described, from the

people Mr. Karol said you took it from?  You agree in every

other regard with what Mr. Karol said, correct?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Thank you.

Mr. Purcel, do you wish to add anything else or make

any other corrections?

MR. PURCEL:  No, Your Honor.

THE COURT:  Ms. Smith, what is your plea to the

information?

THE DEFENDANT:  Guilty.

THE COURT:  Is your plea entirely voluntarily

made without threats or promises for you to enter into this

plea?

THE DEFENDANT:  Yes.

THE COURT:  Your plea then is of your own free

will because you are guilty, correct?

THE DEFENDANT:  Correct.

THE COURT:  Since you acknowledge that you are in

fact guilty as charged in the information and that you have

freely waived indictment in this case, that there is an

adequate factual basis for your plea, that you've had the

assistance of an able lawyer, that you know your right to a

trial which is being waived if your plea is accepted, you

1    know what the maximum possible punishment is and what the

2    advisory guidelines preliminarily provide, and on the basis

3    of the answers given by you under oath and on the record and

4    in the presence of your lawyer as well as the remarks of

5    counsel for both sides, I hereby find as follows:

6         I find that you were advised of your constitutional

7    rights; that you made a knowing, intelligent, and voluntary

8    waiver of those rights; and further that you've been advised

9    of your limited rights for appeal of both the plea and the

10   sentence.

11        I further find that the plea was made knowingly,

12   voluntarily, and with an understanding of the charge and the

13   maximum penalties involved, and the affects of the plea.

14        Accordingly, I'm entering a finding and recommendation

15   of a plea of guilty which will be submitted to the district

16   judge.

17        If Judge Carr accepts and adopts my findings, a guilty

18   entry -- a guilty judgment shall enter forthwith.

19        To expedite the completion of this case, the matter

20   will be immediately referred to the probation office for the

21   preparation of a presentence report which we talked about

22   before.

23        Sentencing will take place not earlier than 15 weeks

24   from when the district judge adopts my recommendation and

25   enters the judgment upon a guilty plea.

1          The parties are instructed to review the presentence

2     investigation report, to file any objections to that report,

3     and to file any additional presentence memorandum in advance

4     of the sentencing hearing.

5          Ms. Smith, you're expected to cooperate fully and

6     completely with the preparation of the presentence report.

7     Failure to do so will certainly be called to the attention

8     of the district judge prior to sentencing and would

9     presumably be taken into consideration by him in determining

10    the appropriate sentence and particularly whether to grant

11    credit for acceptance of responsibility, so conduct yourself

12    accordingly.

13         Mr. Karol, what is the government's position with

14    regard to presentence release or detention?

15              MR. KAROL:  We concur with the recommendation of

16    a $10,000 unsecured bond, and she -- prior to the Court

17    entering the court, her attorney requested, and we have no

18    objection to a modification of the condition that she be

19    allowed to travel to Cincinnati to visit her mother.  Her

20    travel was restricted to the Northern District of Ohio.

21    That would require travel to the Southern District.  The

22    government has no objection to that.

23              THE COURT:  Ms. Lafferty?

24              THE PRETRIAL SERVICES OFFICER:  No objection.

25              THE COURT:  Should we just say Ohio then?

1          THE PRETRIAL SERVICES OFFICER:  That's fine.

2          THE COURT:  Ms. Smith, Mr. Purcel, do you folks

3    have a copy of the presentence report and

4    recommendation -- not presentence, pretrial services

5    recommendation?

6          MR. PURCEL:  Yes, Your Honor.  We do have a copy.

7          THE COURT:  Could you follow along with those as

8    I go through them.

9          Ms. Smith, what I'm going to go through -- I'm going

10   to follow the recommendation.

11         Do you have any objections, Mr. Purcel --

12         MR. PURCEL:  None whatsoever.

13         THE COURT:  -- to the terms and conditions?

14         Ms. Smith, I'm going to follow the recommendation

15   that's been made by pretrial services here, and I am going

16   to order that you be released on a $10,000 unsecured bond.

17   I'm going to put certain terms and conditions on that bond

18   which it's really important that you follow because your

19   failure to follow one of these terms and conditions may well

20   result in your -- in revocation of your terms of release.

21   It can also result in separate charges for another criminal

22   offense.  Particularly your failure to appear is a serious

23   offense and would be prosecuted as such.

24         Furthermore, you need to understand that your

25   commission of any other crime, state or local, while you're

1   under this release is itself -- can result in much more

2   serious punishment for that crime because of the fact that

3   you're out on this terms of release.

4   Do you understand that?

5   THE DEFENDANT:  Yes.

6   THE COURT:  Okay.  I want you to listen real

7   closely as I give you the terms and conditions.  You're also

8   going to get them in writing and then you're going to be

9   asked to sign them.  But it's real important that you and I

10  look each other in the eye and we understand what's going on

11  here, okay?

12  THE DEFENDANT:  Yes.

13  THE COURT:  To reasonably assure your appearance

14  and the safety of the community, it will be the finding of

15  the Court that you be released on a $10,000 unsecured bond

16  with the following conditions:

17  You shall not commit any offense in violation of

18  federal, state, or local law while on release in this case.

19  You shall immediately advise pretrial services, the

20  defense counsel, and the U.S. attorney in writing before any

21  change in address and/or telephone number.

22  You shall refrain from possessing a firearm,

23  destructive device, or dangerous weapon.

24  It's my understanding that there are firearms in your

25  home but that they are kept in a compartment now, they're in

1    a safe, and that you will not have access to that; is that
2    correct?
3                 THE DEFENDANT:  It is correct.
4                 THE COURT:  And it's your statement here on the
5    record under oath that you will not have access to those
6    weapons?
7                 THE DEFENDANT:  I do not and I will not.
8                 THE COURT:  Okay, because you understand as a
9    condition of letting you go home we could order that those
10   be removed from the home, but I'm not going to do that.
11                THE DEFENDANT:  Yes.
12                THE COURT:  I'm going to let you do what you just
13   did, okay.
14         So you shall refrain from possessing a firearm,
15   destructive device, or dangerous weapon.
16         You shall be restricted in your travel to the State of
17   Ohio and/or subject to further order of this Court.
18         You shall refrain from the use or unlawful possession
19   of a narcotic drug or other controlled substance as defined
20   in 21 U.S.C. Section 802 unless it's prescribed by a
21   licensed medical practitioner.
22         You shall appear at all proceedings as required and
23   shall surrender for service of any sentence imposed as
24   directed.
25         You must cooperate in the collection of a DNA sample

1    if the collection is authorized by 42 U.S.C. Section

2    1413(a).

3          You must submit to pretrial services supervision as

4    directed and submit to home, employment -- home or

5    employment visits by pretrial services as deemed necessary

6    and promptly inform pretrial services of any address, phone

7    number, or employment changes.

8          You shall comply with the Northern District of Ohio

9    defendant offender employment policy which may include

10   participation in training, education, counseling, and/or

11   daily job search as directed by the pretrial services and/or

12   probation officer.

13         If you are not in compliance with the condition of

14   supervision requiring full-time employment at a lawful

15   occupation as directed by pretrial services, you may be

16   directed to perform up to 20 hours of community service per

17   week until employed.

18         Do you understand all those terms?

19                THE DEFENDANT:  Yes.

20                THE COURT:  Are you willing to abide by those?

21                THE DEFENDANT:  I am, yes.

22                THE COURT:  I remind you that your failure to

23   appear at the sentencing hearing is a separate criminal

24   offense for which severe penalties can attach.  And if you

25   commit a crime while on release you'll be subject to a more

severe penalty than those which will be imposed upon other
defendants for the same crime.

Have you understood everything we have covered today?

THE DEFENDANT:  Yes.

THE COURT:  Do you have any final questions of
me, anything about the case, your plea, the hearing today?

THE DEFENDANT:  I don't think so.

THE COURT:  Anything from counsel?

MR. KAROL:  Nothing further, Your Honor.  Thank
you very much.

MR. PURCEL:  Nothing further, Your Honor.

THE COURT:  Okay.  Court is adjourned.

(Proceedings concluded at 3:19 p.m.)


                    C E R T I F I C A T E


          I certify that the forgoing is a correct
transcript from the record of proceedings in the
above-entitled matter.


          S/Caroline Mahnke              1/13/2011
          Caroline Mahnke, RMR, CRR          Date